UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                  :

Mt. Hawley Insurance Company,              :

             Plaintiff,             :

                                   :                 23-cv-2342 (LJL)

        -v-                       :

                                   :          OPINION AND ORDER

Buckeye Real Estate Investments LLC,  :

                                 :

             Defendant.         :

                                 :

------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Mt. Hawley Insurance Company ("Plaintiff") moves, pursuant to Federal Rule of Civil Procedure 55(b)(2), for entry of a default judgment granting it declaratory judgment against defendant Buckeye Real Estate Investments LLC ("Defendant"). *See* Dkt. No. 12 ¶ 1.

For the following reasons, the motion for default judgment is granted.

## BACKGROUND

For purposes of this motion, the Court accepts as true the well-pleaded allegations of the Amended Complaint along with the documents incorporated by reference. Dkt. No. 12.

Plaintiff is an Illinois corporation with its principal place of business in Illinois. *Id.* ¶ 2. Defendant is a Florida limited liability corporation with its principal place of business in Florida. *Id.* ¶ 3. Its single member is a natural person who is a resident of Florida. *Id.* ¶ 4. At all relevant times, Plaintiff insured Defendant under a Commercial and General Liability Policy ("the Policy"), and Defendant leased premises located at 21759 State Road 7, Boca Raton, Florida (the "Premises") to Hobby Lobby Stores, Inc. ("Hobby Lobby"). *Id.* ¶¶ 1, 8.

On April 5, 2022, a complaint and demand for trial by jury was filed in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida by Barbara Bush

("Bush") against Defendant and Hobby Lobby ("Initial Complaint"). *Id.* ¶ 9; Dkt. No. 12-2. In the Initial Complaint, Bush alleges that, while she was legally on the Premises owned by Defendant and operated by Hobby Lobby, she tripped and fell on a high curb in front of the store, suffering serious injury. Dkt. No. 12-2 ¶ 8. On June 6, 2022, a first amended complaint for damages was filed in the Bush Action against Defendant and Hobby Lobby ("First Amended Complaint"). Dkt. No. 12 ¶ 10; Dkt. No. 12-3. The First Amended Complaint asserts negligence causes of action against Defendant and Hobby Lobby. Dkt. No. 12 ¶ 13; Dkt. No. 12-3 ¶¶ 10–21. It repeats the initial complaint in alleging that on March 19, 2020, while Bush was a business invitee on the Premises owned by Defendant and possessed by Hobby Lobby, she was injured when she suddenly fell due to the dangerously high and unsafe curb in front of the store, Dkt. No. 12 ¶¶ 11-12; Dkt. No. 12-3, and that, as a result of the negligence of Defendant and Hobby Lobby, Bush "suffered permanent and catastrophic bodily injury, aggravation/activation of a pre-existing condition, disability, significant scarring and disfigurement, past and future pain and suffering, past and future mental anguish, past and future loss of enjoyment of life, past and future inconvenience, [and] past and future medical bills and attendant care," Dkt. No. 12-3 ¶¶ 15, 21. In response, Hobby Lobby filed an answer which includes cross-claims against Defendant for contractual and common law indemnification in connection with Bush's claims. Dkt. No. 12 ¶ 14; Dkt. No. 12-4.

At the time of Bush's alleged injury, there was in effect a Commercial General Liability Policy (No. MGL0190338) issued by Plaintiff to Defendant, for the period August 9, 2019 to August 9, 2020. Dkt. No. 12 ¶ 15. Subject to all of its terms and conditions, the policy includes coverage for bodily injury liability subject to a $1 million per-occurrence limit. *Id.*; Dkt. No. 12-5. The Policy is subject to a Tenants and Contractors – Conditions of Coverage endorsement

(the "Tenants and Contractors Endorsement").  Dkt. No. 12 ¶ 16.  The Tenants and Contractors

Endorsement states:

> We shall have no obligation to defend or indemnify any insured for any "bodily injury," "property damage," and/or "personal and advertising injury" arising directly or indirectly from a commercial tenant's occupation, use or maintenance of any premises leased to such tenant by any insured, such tenant's operations of any kind, or work by a "contractor" unless each and every of the following conditions is satisfied.

*Id.* ¶ 16; Dkt. No. 12-5 at 57.  It then lists the following eight conditions:

> 1. Certificates of insurance are obtained from the tenant prior to commencement of the lease. Such certificates of insurance must list primary commercial general liability coverage in effect for the entirety of the tenancy.

> 2. Written agreements are obtained from the tenant which hold harmless and indemnify the insured(s) against whom the claim is made for all injuries, claims, and suits arising directly or indirectly from the tenant's use or maintenance of any premises leased to the tenant by any insured, or from the tenant's operations of any kind.  Such agreements must expressly provide indemnification to the fullest extent permitted by law.  Such agreements must be contained in the lease agreement and be signed by the parties to the lease prior to or at the commencement of the lease.

> 3. The lease agreement must also require in writing that the tenant will obtain additional insured coverage under its primary commercial general liability policy for each insured(s) against whom the claim is made. Such agreements must be contained in the lease agreement and be signed by the parties to the lease prior to or at the commencement of the lease. Such agreements must require limits of additional insured coverage equal to or greater than the limits of this policy.  Such agreements must state that the additional insured coverage is to be primary and noncontributory.

> 4. The tenant's primary commercial general liability insurer agrees to defend and indemnify every insured against whom the claim is made for the "bodily injury," "property damage," and/or "personal and advertising injury," and does so on a primary basis under a policy with limits equal to or greater than the limits of this policy.

> 5. Certificates of insurance are obtained from each and every "contractor" prior to commencement of such "contractor's" work. Such certificates of insurance must list primary commercial general liability coverage in effect at all times the work is performed with limits equal to or greater than the limits of this policy.

6. Written agreements are obtained from each and every "contractor" which hold harmless and indemnify the insured(s)against whom the claim is made for all injuries, damages, claims, and suits arising directly or indirectly from the "contractor's" work (including any work performed by the "contractor's" subcontractors or sub-subcontractors). Such agreements must expressly provide indemnification to the fullest extent permitted by law. Such agreements must be signed by the parties prior to the date of the "occurrence" or offense.

7. The written agreements required in condition **6.** must also require that the "contractor" will obtain additional insured coverage under the "contractor's" primary commercial general liability policy for each insured(s) against whom the claim is made. Such agreements must be signed by the parties to the agreement prior to the date of the "occurrence" or offense. Such agreements must require limits of additional insured coverage equal to or greater than the limits of this policy. Such agreements must state that the additional insured coverage is to be primary and noncontributory.

8. The "contractor's" primary commercial general liability insurer agrees to defend and indemnify every insured against whom the claim is made for the "bodily injury," "property damage," and/or "personal and advertising injury," and does so on a primary basis under a policy with limits equal to or greater than the limits of this policy

Dkt. No. 12 ¶ 16; Dkt. No. 12-5 at 57.

The Policy also is subject to the Service of Suit and Conditions Endorsement which states

in part:

### Conditions

1. This Policy is amended to add the following Conditions:

    **AA.**   Jurisdiction and Venue. It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the "Insured" shall submit to the jurisdiction of a court of competent jurisdiction in the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction. Any litigation commenced by any "Insured" against the Company shall be initiated in New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

    **BB.**   Choice of Law. All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with

4

the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

Dkt. No. 12 ¶ 16; Dkt. No.12-5.

In its Amended Complaint, Plaintiff states that that the Bush action alleges that the bodily injury arose directly or indirectly from Hobby Lobby's occupation, use, or maintenance of the Premises. Dkt. No. 12 ¶¶ 17–22; Dkt. No. 12-4. Plaintiff also alleges that Defendant failed to satisfy the conditions precedent to the Tenants and Contractors Endorsement. Specifically, it alleges that Defendant did not, prior to the commencement of the lease between Defendant and Hobby Lobby ("the Lease"), provide a certificate of insurance obtained from Hobby Lobby listing primary commercial general liability coverage in effect for the entirety of the tenancy pursuant to Tenants and Contractors Endorsement condition 1. Dkt. No. 12 ¶ 19. The Lease did not expressly state that Hobby Lobby would indemnify Defendant to "the fullest extent permitted by law" pursuant to Tenants and Contractors Endorsement condition 2. *Id.* ¶ 20. The Lease did not contain language assuring that additional insured coverage is to be "primary and noncontributory," pursuant to Tenants and Contractors Endorsement condition 3. *Id.* ¶ 21. Hobby Lobby's commercial and general liability insurer did not agree to defend and indemnify Defendant in the underlying action, pursuant to Tenants and Contractors Endorsement condition 4. *Id.* ¶ 22.

## PROCEDURAL HISTORY

Plaintiff filed this complaint on March 20, 2023, Dkt. No. 1, and an electronic summons was issued on March 21, 2023, Dkt. No. 5.[1] On August 28, 2023, the Court held an initial

---

[1] For technological reasons, Plaintiff's complaint did not include its exhibits when it was originally filed on ECF. Dkt. No. 6. On April 3, 2024, the Court gave Plaintiff leave to refile its complaint with exhibits, Dkt. No. 7, and, on April 4, 2023, Plaintiff did so, Dkt. No. 8.

pretrial conference, at which no counsel appeared on behalf of Defendant.  The Court directed

Plaintiff to file a certificate of service by September 1, 2023, and to file an amended complaint

establishing that the Court had diversity jurisdiction of this matter.  Aug. 28, 2023 Minute Entry.

On August 31, 2023, Plaintiff filed an Amended Complaint, which pleaded diversity jurisdiction

pursuant to 28 U.S.C. § 1332(a)(1).  Dkt. No. 12.  That same day, Plaintiff also filed an

Affirmation of Service, reflecting that service of its initial complaint had been made on

Defendant on May 16, 2023, by first-class and certified mail, pursuant to Florida statutes section

48.062(4)(b).  Dkt. No. 14.[2]  On September 20, 2023, Plaintiff filed an Affirmation of Service

that its amended complaint was served on Defendant on September 20, 2023, by first class and

certified United States mail pursuant to Florida Stat. § 48.062(4)(b) and that a United States

Postal Service receipt acknowledgement had been received from the Office of the Florida

Department of State.  Dkt. No. 18.  On October 5, 2023, Plaintiff filed a Supplemental

Affirmation of Service and Affirmation of Compliance.  Dkt. No. 19.  Plaintiff recited that, on

September 8, 2023, Plaintiff had attempted personal service of the amended complaint on the

registered agent of Defendant but that it was unsuccessful because neither the registered agent

nor any other authorized person was on site.  *Id.*  On September 12, 2023, Plaintiff attempted

service on authorized person Julie A. Dhonau, but service could not be completed because the

listed address was a post-office box and attempts to locate an alternative address were

unsuccessful.  *Id.*  After those efforts, which demonstrated due diligence, service was made

through the Florida Department of State pursuant to Florida Stat. § 48.062(4)(b).  *Id.*

---

[2] Fla. Stat. § 48.062, provides in pertinent part, that service on a domestic limited liability company may be made by service on the Secretary of State as an agent of the domestic limited liability company if, after due diligence service cannot be completed by service on the limited liability company's registered agent listed on its latest annual report.

The Court held a conference on October 13, 2023, at which no counsel for Defendant appeared.  Oct. 13, 2023 Minute Entry.  The Court scheduled a hearing on Plaintiff's motion for a default judgment for November 13, 2023.  *Id.*  On October 12, 2023, Plaintiff requested a clerk's certificate of default, Dkt. Nos. 20-21, and on October 25, 2023, the Clerk of Court issued a Certificate of Default, Dkt. No. 25.  On October 30, 2023, Plaintiff filed this motion for a default judgment along with a declaration in support of the motion and a proposed judgment. Dkt. Nos. 26-28.  Plaintiff served the motion on Defendant that same day by overnight delivery to the address listed for Defendant's registered agent for service.  Dkt. No. 29.  The Court held a hearing on the motion for a default judgment on November 13, 2023, which was attended by counsel for Plaintiff but not by any counsel for Defendant.  Nov. 13, 2023 Minute Entry.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see also* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *see also Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, the Court is "required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Federal Rule of Civil Procedure 55(c), which "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and a plaintiff "must therefore substantiate [her] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017) (summary order). As this is a declaratory judgment action, no damages calculation is necessary in this case.

**DISCUSSION**

I.    **Declaratory Judgment Act**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Act 'confers a discretion on the courts rather than an absolute right upon the litigant.'" *MSR Tr. v. Nationstar Mortg. LLC*, 2022 WL 3441613, at *12 (S.D.N.Y. July 28, 2022), *report and recommendation adopted*, 2022 WL 17689839 (S.D.N.Y. Dec. 15, 2022) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)); *see also AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." (citation omitted)). "In determining whether a declaratory judgment action is warranted, a court considers the totality of circumstances, including whether declaratory judgment (1) will 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Nationstar Mortg. LLC*, 2022 WL 3441613, at *12 (citation omitted).[3]

---

[3] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000. Although the First Amended Complaint does not specify the value of Bush's claims, there is a "reasonable probability that the damages claimed (and the attorneys fees at issue) could exceed $75,000. *See Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-00150-ALC, 2021 WL 4427016, at *4 (S.D.N.Y. Sept. 27, 2021). The Court has personal jurisdiction over Defendant pursuant to New York General Obligations Law §§ 5-1401 and 5-1402, as the Policy contains a Service of Suit and Conditions Endorsement pursuant to which Defendant consents to the jurisdiction of the New York courts. Dkt. No. 12; Dkt. No. 12-5 at 74.

"[C]laims arising under insurance contracts where all the damages have not yet accrued are often an appropriate subject of declaratory judgment actions." *Starr Indem. & Liab. Co. v. Exist, Inc.*, 2023 WL 4029821, at *4 (S.D.N.Y. June 14, 2023).  In particular, "it is common for the court to entertain a declaratory judgment action where the insurer disputes the duty to defend and indemnify its insured." *Id.*; *see* 14A Couch on Ins. § 202:3 ("In case of doubt or a dispute as to whether there is a duty to defend, based on a dispute over whether an insurance policy afford coverage for the conduct alleged in the complaint against the insured, a declaratory judgment action or motion may be brought to make the determination.").  Here, no losses have yet accrued and declaratory judgment would serve a useful function by clarifying whether Plaintiff has a duty to defend or indemnify defendant.  This clarification is beneficial not only to the parties in this instant action, but to Bush as well, who, as plaintiff in the underlying action, will benefit from knowing who exactly is financially liable if she prevails. *See, e.g.*, *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 96 (2d Cir. 2023).  The question regarding Plaintiff's duty gives rise to this action, and a declaratory judgment will afford relief from uncertainty over that question; therefore, this Court will exercise its discretion to preside over this action.

## II.    Service Was Proper Under Florida Statutes Section 48.062

To prevail on a motion of default judgment, Plaintiff must show that Defendant was properly served.  Florida Stat. § 48.062 sets forth the procedure for service of LLCs under Florida law.  It provides that "[a] domestic limited liability company or registered foreign limited liability company may be served with process required or authorized by law by service on its registered agent designated by the domestic limited liability company or registered foreign limited liability company."  Fla. Stat. § 48.062(2).  It provides for the following methods of service:

(2) A domestic limited liability company or registered foreign limited liability company may be served with process required or authorized by law by service on its registered agent designated by the domestic limited liability company or registered foreign limited liability company under chapter 605.

(3) If service cannot be made on a registered agent of the domestic limited liability company or registered foreign limited liability company because the domestic limited liability company or registered foreign limited liability company ceases to have a registered agent, or if the registered agent of the domestic limited liability company or registered foreign limited liability company cannot otherwise be served after one good faith attempt because of a failure to comply with this chapter or chapter 605, the process may be served on any of the following:

(a) Any manager of a manager-managed domestic limited liability company or registered foreign limited liability company.

(b) Any member of a member-managed domestic limited liability company or registered foreign limited liability company.

(c) Any person listed publicly by the domestic limited liability company or registered foreign limited liability company on its latest annual report, as most recently amended.

*Id.* § 48.062(3). However, in the event that service cannot be completed despite duly diligent attempts to find an authorized agent or representative of a party, § 48.062(4) permits the serving party to effect service by mailing the complaint to the Florida Department of State:

(4) If, after due diligence, the process cannot be completed under subsection (2) and if either:

(a) The only person listed publicly by the domestic limited liability company or registered foreign limited liability company on its latest annual report, as most recently amended, is also the registered agent on whom service was attempted under subsection (2); or

(b) After due diligence, service was attempted on at least one person listed publicly by the domestic limited liability company or registered foreign limited liability company on its latest annual report, as most recently amended, and cannot be completed on such person under subsection (3),

the service of process may be served as provided in s. 48.161 on the Secretary of State as an agent of the domestic limited liability company or the registered foreign limited liability company or by order of the court under s. 48.102.

11

Fla. Stat. § 48.062(4).[4]

Plaintiff has demonstrated that it made effective service of process.  It exercised due diligence and attempted to make service on Defendant's registered representative and member. Both the Florida Department of State website and Defendant's 2023 annual report list Nancy J. Dhonau at 21759 State Road 7, Boca Raton, Florida 33428, as Defendant's registered agent and authorized representative.  Dkt. No. 27-11.  Ms. Dhonau is also alleged to be the single member of Defendant.  Dkt. No. 12 ¶ 4.  Personal service of the initial complaint was twice attempted on Defendant, on March 31 and April 11, 2023, but Defendant did not have a registered agent available as required by § 48.062(2).  Dkt. No. 27-12.  Apparently, the listed address was not a corporate office of Defendant's and Ms. Dhonau was not present at either date to receive the complaint; further attempts at locating an alternative address were unsuccessful.  Dkt. No. 27-12. These attempts constitute due diligence under Florida Statutes section 48.062(4).  Dkt. No. 19. Given Defendant's failure to have an agent or representative available pursuant to sections 48.062(2) or (3), Plaintiff served Defendant with the initial complaint under section 48.062(4) by first-class and certified United States mail to the Florida Department of State.  Dkt. No. 27-14; Dkt. No. 27-15.

On August 31, 2023, Plaintiffs filed the amended complaint.  Dkt. No. 12.  On September 8, 2023, service of the amended complaint was attempted and again unable to be completed due to Defendant's failure to have an authorized agent or representative available.  Dkt. No. 27-22.

---

[4] Section 605.0117 of the Florida Revised Limited Liability Company Act provides that process may be served on the secretary of state as an agent of a limited liability company in the event that the company's registered agent cannot with reasonable diligence be served and a member of a member-managed limited liability company act (or the manager of a manager-managed limited liability company act) cannot be served.  Fla. Stat. § 605.0117.

Service was then attempted on registered agent and authorized person Julia A. Dhonau on September 12, 2023 at P.O. Box 1450, Loxahatchee, Florida, 33470, but could not be completed because the listed address was a post office box.  Dkt. No. 27-23.  When no authorized representative could be located despite multiple attempts at ascertaining the correct address, due diligence under Florida Statutes § 48.062(4) was satisfied.  Dkt. No. 27-23.  Service of the amended complaint was finally made through the Florida Department of State on September 20, 2023, pursuant to Florida Statutes § 48.062(4).  Dkt. Nos. 27-24; Dkt. No. 27-25; Dkt. No. 27-26.  Based on the above facts, this Court holds that Defendant was properly served Florida Stat. § 48.062(4).

### III.    Mt. Hawley Has No Duty to Defend or Indemnify Buckeye

Under New York law, the duty to defend and the duty to indemnify are distinct concepts. "[A]n insurer will be called upon to provide a defense whenever the allegations of the complaint suggest . . . a reasonable possibility of coverage." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d. Cir. 2014).[5]  "An insurer may refuse to defend '*only if* it could be concluded as a matter of law that there is *no possible* factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'"  *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013) (emphasis added) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985)); *see Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 323 (S.D.N.Y. 2020).  In contrast, the duty to indemnify occurs only "if the claim for which the insured has been judged liable lies within the policy's coverage." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (citing *Frontier Insulation Contractors, Inc. v.*

---

[5] The Policy contains a Service of Suit and Conditions Endorsement pursuant to which parties agree that all disputes are to be settled under New York law.  Dkt. No. 12; Dkt. No. 12-5 at 74.

*Merchs. Mut. Ins. Co.*,690 N.E.2d 866 (N.Y. 1997)).  It thus follows that where there is no duty to defend, there can be no duty to indemnify.  If there is no possible basis in law or fact that would support a judgment of liability under the insurance policy, the insurer has no duty to indemnify.

In assessing whether there is a possible factual or legal basis for a duty to defend, New York courts will look to both the "four corners" of the underlying complaint and to any knowledge of potential claims possessed by the insurer.  *Worth Constr. Co. v. Admiral Ins. Co.*, 888 N.E.2d 1043, 1045 (N.Y. 2008); *Fitzpatrick v. Am. Honda Co.*, 575 N.E.2d 90, 93 (N.Y. 1991).  If allegations within the "four corners" of the underlying complaint potentially give rise to a covered claim, the insurer has a duty to defend.  *Worth Constr. Co.*, 888 N.E.2d at 1045.  Likewise, if the insurer has any knowledge of events that suggest a possibility of coverage, they have a duty to defend, even if the facts in question are not stated in the underlying complaint.  *Fitzpatrick*, 575 N.E.2d at 94.

Before an insurer is obligated either to defend or to indemnify, however, the insured must satisfy any conditions precedent.  *See Mt. Hawley Ins. Co. v. Nat'l Builders LLC*, 2009 WL 1919611, at *2 (S.D.N.Y. June 30, 2009).  "A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."  *Id.* (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,* 660 N.E.2d 415 (N.Y. 1995)).  "[Where satisfaction of a requirement is] a condition precedent to coverage, the insurer need not show prejudice."  *Seaport Park Condo. v. Greater N.Y. Mut. Ins. Co.*, 828 N.Y.S.2d 381 (1st Dep't 2007) (citing *Great Canal Realty Corp. v. Seneca Ins. Co.,* 833 N.E.2d 1196 (N.Y. 2005)).  The Tenants and Contractors Endorsement contains eight terms, each of which is best understood as a condition precedent.  They are "clear

and unambiguous." *Nat'l Builders*, 2009 WL 1919611, at *3.   Plaintiff's complaint contains well-pleaded allegations that Defendant has not satisfied any of them.

First, the well-pleaded allegations establish that Defendant did not satisfy the condition precedent stating that "[c]ertificates of insurance are obtained from the tenant prior to the commencement of the lease.  Such certificates of insurance must list primary commercial general liability coverage in effect for the entirety of the tenancy."  Dkt. Nos. 12 ¶ 27; Dkt. No. 12-5. Defendant never provided Plaintiff with any such certificate of insurance.  Dkt. No. 12 ¶ 27.

Second, Defendant failed to satisfy the following section of the Tenants and Contractors Endorsement:

> Written agreements are obtained from the tenant which hold harmless and indemnify the insured(s) against whom the claim is made for all injuries, claims, and suits arising directly or indirectly from the tenant's use or maintenance of any premises leased to the tenant by any insured, or from the tenant's operations of any kind. Such agreements must expressly provide indemnification to the fullest extent permitted by law. Such agreements must be contained in the lease agreement and be signed by the parties to the lease prior to or at the commencement of the lease.

Dkt. No. 12 ¶ 28; Dkt. No. 12-5.  The indemnification provisions of the Lease contain no such assurances.  Quite the opposite, in fact: section 16.2 of the lease agreement states that Defendant shall indemnify the tenant for claims related to "any condition existing on the Property under the control of Landlord" even when the claim arises from the tenant's operations.  Dkt. No. 12-1.  This plainly does not comply with the requirement that tenant indemnify landlord for *all* claims arising from tenant's use or maintenance of a premises. Defendant has thus failed to satisfy a second condition precedent.

Third, Defendant failed to abide by the following term of the endorsement:

> The lease agreement must also require in writing that the tenant will obtain additional insured coverage under its primary commercial general liability policy for each insured(s) against whom the claim is made. Such agreements must be contained in the lease agreement and be signed by the parties to the lease prior to

> or at the commencement of the lease. Such agreements must require limits of additional insured coverage equal to or greater than the limits of this policy. Such agreements must state that the additional insured coverage is to be primary and noncontributory.

While the Lease does require Hobby Lobby to carry commercial general liability insurance, it contains no language requiring that the coverage be primary and non-contributory.  Dkt. No. 12 ¶ 29; Dkt. No. 12-1.  Defendant has therefore not satisfied this portion of the endorsement.

Finally, Defendant did not satisfy a term of the endorsement stating that

> The tenant's primary commercial general liability insurer agrees to defend and indemnify every insured against whom the claim is made for the "bodily injury," "property damage," and/or "personal and advertising injury," and does so on a primary basis under a policy with limits equal to or greater than the limits of this policy.

Hobby Lobby's commercial general liability insurer has not agreed to indemnify Defendant, as evidenced by Hobby Lobby's cross claim against Defendant in the underlying action.  Dkt. No. 12 ¶ 30; Dkt. No. 12-1; Dkt. No. 12-4.  In sum, Defendant failed to satisfy four of the eight listed conditions of coverage within the Policy.

Plaintiff therefore has no duty to defend, and as such no duty to indemnify either.  Other courts have held similarly on facts near-identical to the ones here.  *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, 2021 WL 4427016, at *6 (S.D.N.Y. Sept. 27, 2021) ("Mt. Hawley has no obligation to defend or indemnify. . .[because] the Policy outlines unambiguous conditions that must be satisfied *before* Plaintiff owes any duty to defend or indemnify, which Defendants failed to comply with."); *Nat'l Builders*, 2009 WL 1919611, at *3 ("Because each of these requirements is an express condition precedent to coverage under the policy, any one of these failures is a sufficient basis for Mt. Hawley to disclaim coverage, whether or not Mt. Hawley suffered any prejudice."); *Mt. Hawley Ins. Co. v. Van Cortland Vill. LLC*, 2011 WL 5834255, at

*9 (S.D.N.Y. Nov. 18, 2011) ("Because its conditions were not met, the Endorsement voids coverage for the Employees' claims.")

## CONCLUSION

For the above reasons, the motion for default judgment is GRANTED.  It is ORDERED, ADJUDGED, AND DECLARED that Mt. Hawley Insurance Company has no duty to defend or indemnify Buckeye Real Estate Investments LLC in connection with the March 19, 2020 accident and subsequent related action captioned <u>Barbara Bush v. Buckeye Real Estate Investments, LLC and Hobby Lobby Stores, Inc. (Florida Circuit Court, Fifteenth Judicial Circuit, Palm Beach Co., Case No. 2022-CA-003163-XXX-MB).</u>

The Clerk of Court is respectfully directed to close Dkt. No. 26.

SO ORDERED.

Dated: January 29, 2024
      New York, New York

                            LEWIS J. LIMAN
                        United States District Judge